**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ALETA FRANCIS and CELIA PEARCE,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No.** 5:25-CV-86 |
| | § | |
| **MARSHA NELSON and PROJECT** | § | |
| **INSIGHT,** | § | |
| **Defendants** | § | |

## COMPLAINT

Come now, Aleta Francis and Celia Pearce, Plaintiffs herein, and file their Complaint, and would respectfully show as follows:

### I. PARTIES

1.     Plaintiff Aleta Francis, a citizen of California, is a natural person residing in California at all times relevant to this lawsuit and suing in her personal capacity.  She is one of two daughters and exclusive heirs of Lucia Capacchione, owning an undivided 50% interest in the intellectual property infringed by one or both defendants.

2.     Plaintiff Celia Pearce, a citizen of Massachusetts, is a natural person residing in Massachusetts at all times relevant to this lawsuit and suing in her personal capacity. She is one of two daughters and exclusive heirs of Lucia Capacchione, owning an undivided 50% interest in the intellectual property infringed by one or both defendants.

3.     Defendant Project Insight is a not-for-profit corporation organized under the laws of the State of Texas and with its principal place of business in Texas.  It may be served through its agent for service of process, Marsha Nelson, at its registered address of 9757 Braun Run, San Antonio, TX, 78254.

4.     Defendant Marsha Nelson is a natural person and citizen of Texas, residing at 9757 Braun Run, San Antonio, TX, 78254.

## II. JURISDICTION AND VENUE

5.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under 28 U.S.C. § 1338, as Plaintiffs brings this action against defendants, *inter alia*, for copyright violation in breach of 17 U.S.C. § 501 *et seq*.  This Court further has supplemental jurisdiction over any state law cause of action brought in conjunction with the federal questions pursuant to 28 U.S.C.§ 1367. The Court further has jurisdiction under 28 U.S.C. § 1332, as this suit involves an action between completely diverse citizens of different states and the amount in controversy exceeds $75,000.

7.     Venue is proper in the Western District of Texas, San Antonio Division under 28 U.S.C. § 1400 because that is where at least one Defendant resides or is headquartered.

## III.   FACTUAL BACKGROUND

### *Lucia Capacchione invents new and revolutionary therapeutic techniques*

8.     Lucia Capacchione was a therapeutic genius.  She graduated from Immaculate Heart College in Los Angeles in 1959 with a degree in Fine Arts and English Literature.  She worked originally as a trainer for the American Montessori Society in the 1960s, and then became a Child Development Supervisor for Catholic Charities.  In 1967, she resigned from that position, but remained a consultant to both Catholic Charities and American Montessori.

9.     In 1973, Lucia fell ill, and traditional treatments failed to improve her physical illness.  Out of desperation, she began rigorously drawing and journaling in sketchbooks and found that, over time, this form of art therapy helped to resolve her condition. She pursued a Master's in Psychology and Art Therapy from Goddard College in Plainfield, Vermont, graduating in 1975.

In 1976, she invented what came to be known as the Creative Journal Method (1976) and published that method in her groundbreaking 1979 book *The Creative Journal: The Art of Finding Yourself*. The book became a best-seller and inspired the rest of Lucia's life's work, including more than two dozen other books popular all over the world. It is during this period that Lucia began actively marketing her therapeutic methods starting with book signings, lectures, small workshops, and touring to raise awareness about her books and programs.

10.     Lucia developed not only the Creative Journal Method (1976), but also three further-advanced methods of art therapy—the Inner Child Reparenting Method (1976), the Whole-Brain Two-Handed Method (1976), and the Body-Mind Healing-Arts Method (1980). These works became the foundation of Creative Journal Expressive Arts (CJEA). Lucia had, in effect, over the course of five years invented a whole new way of using art and journaling as a means both of healing and of nurturing artistic talent and personal growth.

11.     The birth of this new form of disciplined artistic rejuvenation did not go unnoticed. From 1983 until 1993, Lucia worked as a consultant to Walt Disney Imagineering Research and Development, Inc., the arm of the Walt Disney Company dedicated to innovation. During this time, she continued to write, producing *The Power of Your Other Hand*: *A Course in Channeling the Inner Wisdom of the Right Brain* in 1988 and *Recovery of Your Inner Child* in 1991. By the end of 1993, she had five other books published on her techniques – and, in the meantime, she had also obtained her Doctorate in Psychology from the University of Louisiana. At a mere 53 years old, Dr. Lucia Capacchione had already lived an extraordinary career.

### *Lucia develops the VISIONING method and trademark*

12.     Over the course of her career, under the mantle of Creative Journal Expressive Arts (CJEA), Lucia had developed five unique therapeutic methods: Creative Journal Method (1976),

the Inner Child Reparenting Method (1976), the Whole-Brain Two-Handed Method (1976), and the Body-Mind Healing-Arts Method (1980). In 1994, she developed a fifth method, known as the VISIONING Method.  Lucia trademarked VISIONING and marketed the entire suite of methods as Creative Journal Expressive Arts (CJEA).

### *Celia Pearce creates a logo for her mother to use in marketing her business*

13.    To help her market these methods, she turned to her only children, her daughters Aleta and Celia.  Aleta at the time worked as a web designer on a then-novel form of electronic communication that was becoming more popular—the Internet. From approximately 1997-1998, Aleta developed what would become the first version of Lucia's personal webpage, that included promotion of Lucia's Creative Journal Expressive Arts (CJEA) suite of methods, which went public at www.luciac.com.  Celia, for her part, created artistic symbols for Lucia to use that embody the art therapy methods used as part of the Creative Journal Expressive Arts (CJEA)—the most prominent of which included five stylized people holding hands in a circle:



Various derivations of Celia's original artwork were created, including:



The original drawing is a federally registered copyright, VA2424020, with Celia as the author. Celia granted Lucia an exclusive license to use the drawing and its derivations during her lifetime.

14.  Through the website, Lucia was able to expand her marketing of the Creative Journal Expressive Arts (CJEA) suite of methods and promote her newly-created training program.  In 1997 or early 1998, Lucia began advertising a CJEA Certification Training Program. In her advertisements, she used the five-figure logo and other art created by Celia for this purpose. In 1999, Lucia decided she wanted to formalize and regularize the materials used in the training program.  She created and published the Creative Journal Training Manual for CJEA Certification Training Program (the "Training Manual").

15.    As part of her initial marketing, Lucia in 1997 attended a luncheon and sail on Lake Arrowhead in California. While there, she met Marsha Nelson, who expressed an interest in Lucia's books. Lucia invited Marsha to attend a workshop put on by Lucia the next day. Marsha attended Lucia's workshop and thought Lucia's method of art therapy might prove useful for Marsha, who was actively participating in talk therapy for treatment of her own depression.  She publicly discussed her experience with therapy and her introduction to Lucia and Lucia's art therapy techniques in a web broadcast in January 2022, when Marsha conducted  interview with

Daniel G. Garza on the "Put It Together Show," available at https://www.youtube.com/watch?v=iYAKZKgZjkU&t=1877s (downloaded December 3, 2022). The interview is linked on the Project Insight website, for Project Insight customers and potential customers to see. In that interview, Marsha explains why Lucia's creations, including CJEA and VISIONING, had serious therapeutic value, detailing her own deeply personal story and experiences with Lucia's work to explain why others should pay to receive the same training through Project Insight

16.     Marsha attended the workshop and became a follower of Lucia. For the next several months, Marsha repeatedly attended retreats and trainings organized and hosted by Lucia, in the United States, Canada, and Italy. Eventually, Marsha stopped talk therapy, indicating to her counselor that the art therapy techniques she had received from Lucia made talk therapy unnecessary for Marsha.  She continued to tour with Lucia through Canada.

17.     While touring in Canada, Marsha was approached by an attendee asking whether there was a training program for the Creative Journal Expressive Arts (CJEA) suite of methods. Marsha asked Lucia about such a program. Lucia answered that she was in the process of creating such a formal program with herself acting as creator and instructor, but indicated she needed an assistant to handle the coordination of such a program.  She offered the position to Marsha, who accepted, eventually becoming a 1099 employee of Lucia.

18.     Lucia distributed advertisements for a CJEA Certification Training conducted by Lucia, who would serve as the creator and sole instructor of the program, with Marsha assisting. The first CJEA Certification Training Program, held in Canada, was well-attended. The next year, Lucia put on another program, again with a brochure using the artwork made by Celia and given to Lucia, this time formalizing Marsha's role as a "training supervisor" for the students in the

program and stressing that Lucia was the program creator and sole instructor. Again, the 2-week live training program was a success.

19.    In 2000, Lucia published *Visioning: Ten Steps to Designing the Life of Your Dreams,* a method which she had initially invented in 1994.  She also, in the year 2000, applied for a Trademark on VISIONING, which the trademark office registered on January 8, 2002 with registration number 2528617. The mark was renewed in 2011 and 2022, remains issued and active, and is eligible to be renewed again in 2031.

### Lucia's CJEA Certification Training Program becomes wildly successful for 21 years

20.    From 2000 onwards, spurred by the demand for personal training from Dr. Capacchione herself, Lucia's CJEA Certification Training Program became wildly successful, with an annual training cycle in which she was the program creator and sole instructor.  Her work was in high demand, and to participate in her training participants would spend approximately $3,000 at the start for tuition and supervision fees.  She also provided yearly recertification, both to keep tabs on the practitioners she trained and to provide a regular source of income, though less than the initial training program.

21.    In 2004, Mycah Blake (now known as Mycah Lee Arellano), one of the persons Lucia trained in CJEA, founded Project Insight as a not-for-profit corporation in Texas. https://web.archive.org/web/20180308035912/http://www.project-insight.net/.  Mycah was its executive director.https://web.archive.org/web/20160328031255/http://project-insight.net/2.html. Nelson later succeeded Mycah as Executive Director and was serving in that capacity at the time of all the acts of wrongdoing alleged in this Complaint. For the first ten years of its existence, it mainly provided therapy sessions for cancer survivors and a summer camp for youth using some of the CJEA methods.  Lucia had no direct involvement in Project Insight—she did not own it or

control it, though she knew of it. Lucia was never an employee, officer, board member or director of Project Insight.

22.     Lucia's personal network continued to grow.  She eventually tried to summarize her career on her LINKEDIN page, stating:

> Lucia Capacchione, PhD, ATR. REAT is an Art Therapist, Expressive Arts Therapist and Visioning® Coach. She originated the Creative Journal Method which forms the basis of her years long training in Expressive Arts for healers and education professionals. 77 instructors worldwide are applying these methods as presented in Dr. Capacchione's 20 books (in 20 languages), including bestsellers: Recovery of Your Inner Child, The Creative Journal, The Power of Your Other Hand and Visioning: Ten Steps to Designing the Life of Your Dreams. Dr. Capacchione also conducts a private practice in Art Therapy and Visioning® Life Coaching on skype, phone and in person. She consults to school districts and trains staff to implement researched, evidence-based methods such as The Creative Journal for Children and Teens (K-12) and Putting Your Talent to Work career development programs (middle and high school).

Between 2020 and 2022, Lucia rewrote the Training Manual with the help of her daughter Aleta. After Lucia passed, Aleta filed and registered two copyrights covering different chapters of the rewritten training manual based on when they were written, with Lucia and Aleta co-credited as the authors.

23.     Beginning February 18, 2021, Lucia expanded in a new direction using the business name CJEA Institute. She, solely as registrant and director of CJEA Institute, filed a California Fictitious Business Statement form that was enforced in April of 2021.

24.     Unfortunately, COVID had left Lucia incredibly exhausted.  In 2020 and 2021, during the COVID pandemic, Lucia's previously in-person training was transitioned to an online platform with the help of Aleta.  The effect of COVID upon her business was especially felt, given the lack of in-person training sessions, which resulted in Lucia having to do more on-line training. Wanting to be helpful at a time of international crisis, she also began to take new individual clients

in direct response to the need created by the COVID-19 pandemic. In summer of 2022, at 84 years old, she had become extremely burned out, causing her to slip into depression and anxiety.

25.    Unfortunately, the pressures of both a high workload and concerns about finances generated a high level of anxiety and depression which proved too much for the 84-year-old Lucia. Moreover, exacerbating her depression and anxiety was the fact that some individuals were exploiting her name and work for their own enrichment without any remuneration to her.

26.    In August 2022 she reached out to Celia and Aleta, complaining of brain fog, depression, anxiety, and an inability to work, coupled with concerns about money.  At the request of her daughters, Lucia was medically tested and found not to have any physical or cognitive ailments.  Lucia accepted the support, but that by itself was not enough.  She emailed Marsha about her critical mental condition, which had not improved despite COVID lockdowns finally lifting.

27.    In late September 2022, Lucia attempted suicide due to her depression, the resultant inability to work, and her monetary anxiety.  She was briefly hospitalized and then returned home. She was diagnosed with an "adjustment disorder"—an extreme emotional response to a temporary or short-term situational circumstance. A team of family members, friends, and professionals began to monitor Lucia, but it became obvious that she could not attend to business, financial, or medical concerns.  On October 2, 2022, Lucia granted Aleta a power of attorney to make all such decisions on her behalf.

### Marsha and Project Insight try to take advantage of Lucia

28.    On October 2, 2022, Celia texted Marsha about lessening the burden on Lucia by having others take on some of Lucia's responsibilities due to her recent hospitalization.  Marsha responded with statements such as:

> Just let me know what you want me to do. I agree she has been in total control
> of this program for 25 yrs. I never saw the candidates applications, never knew

> the amount of monies she took in for maintenance. She has kept me out of the
> loop. Probably not her fault. I never asked!

And further:

> If she begins trying to run her old business it will become a mess. She needs to
> write books, if she wants to do something now. Trying to run this CJEAI
> Training program is too much.

Lucia, based on the advice of Aleta and Celia, was willing to explore some form of transition, with

Marsha's training coordinator role expanding to take on additional responsibilities. Marsha,

unfortunately, decided that Lucia's depression, mental condition, and financial worries at the end

of COVID meant that Lucia would be susceptible to hard-nosed negotiation.

29.    Marsha contacted Lucia and told her that Marsha did not want to negotiate with

anyone other than Lucia directly -- certainly not her daughters, despite her knowledge that Aleta

had a power of attorney. Marsha and the Board of Project Insight then hired Mike Schnall to

represent them. On October 27, 2024, Schnall sent Lucia a document proposing that Lucia would

turn over all intellectual property she owned (though not intellectual property owned by her

publishers) to Project Insight, conditioned upon Lucia executing a Bill of Sale and Lucia being

paid a sum just under $17,000.

   a) It was also learned that Project Insight had already started to try to make money off of

      Lucia's work on their own. For example, in 2021 Project Insight website displayed a

      "DONATE NOW" link, directly underneath the statement, "We share the methods of

      Lucia Capacchione, PhD. A.T.R., R.E.A.T. author of 22 books and pioneering Art

      Therapist for ourselves first, individuals, and groups," although there was no direct

      contractual arrangement between Dr. Capacchione and Project Insight.

b) Lucia signed the document, but asked for substantive changes to be made before she would execute the bill of sale. Marsha, on behalf of Project Insight and its Board, told Lucia that the document was "non-negotiable."

30.     Lucia refused to execute the Bill of Sale necessary for the transaction to move forward.  On November 11, 2022, Lucia sent an email to Marsha indicating that Lucia would not execute the Bill of Sale proposed by the October 27, 2022 document. Marsha responded by sending her another copy of the document that Lucia had signed, ignoring Lucia's statement she was not proceeding with the closing.

31.     On November 13, 2022, Lucia informed Aleta, to whom she had given Power of Attorney, that Lucia was distressed about the document and did not want the transaction to close. Her daughters then contacted Marsha at the request of and on behalf of their mother and asked that the transaction not close.

32.     Rather than canceling the document, as requested—and without informing Aleta or Celia—Marsha told Lucia that she would send a notary to Lucia's home to execute a sworn Bill of Sale.  When the notary arrived, Lucia would not let the notary in and did not execute the Bill of Sale.  Marsha again told Lucia that she did not want to deal with anyone other than Lucia with regard to the Bill of Sale—especially not Aleta and not Celia.  In response, Aleta sent Marsha a reminder about the Power of Attorney and that Lucia was not well.

33.     Despite being warned to stop badgering Lucia in her compromised mental condition and reminded of the existence of the power of attorney, on November 18, 2022, Lucia recorded in her journal that she had a phone call with Mycah and Marsha about the transfer of ownership. After the phone call, Lucia was distraught.  On November 26, 2022, Lucia made a journal entry about failing her inner child.  On November 28, 2022, she committed suicide by hanging herself

from a beam of her living room at her home in Cambria, California. The Bill of Sale was never signed and transfer of payment for the intellectual property never occurred.

### *Despite No Transfer, Marsha and Project Insight continue their coup*

34.     Marsha and the Board of Project Insight, having been denied the opportunity to legally deprive Lucia of her intellectual property during her life, now continued their coordinated plan to steal that property after Lucia's death. When informed of Lucia's death, Marsha wrote to Aleta and Celia:

> [Lucia] was through with life. She tried once & it didn't work and now she can rest in peace. Please let me know what your plans are for a final resting place. I am here for both. You girls have been my Daughters from another mother.

Despite this statement of family-like bonds, Marsha and the Board of Project Insight began actively misappropriating Lucia's image and name to make money for themselves, and to convert the intellectual property that had been Lucia's for their own purposes.

35.     On November 29, 2022, Project Insight announced it was holding a combination grief seminar and training event. Project Insight promoted the training event with news of Lucia's passing, to be held in "respect for her life's work," using the very intellectual property they did not own for their personal enrichment. Marsha, Project Insight, and the Board of Project Insight, of course, knew they did not own Lucia's intellectual property—Lucia had never executed the Bill of Sale necessary to transfer the intellectual property, and Lucia had never received the payment necessary for the transfer to close. The Board, Project Insight, and Marsha all knew Lucia had killed herself before any transfer of intellectual property had occurred.

36.     In May 2023, Project Insight and its Board continued their actions, hosting a memorial luncheon for Lucia, widely advertising the luncheon using pictures of Lucia along with

her name, all while charging $37 per attendee. Project Insight subsequently indicated that this was a well-attended event.

37.    Even now, Project Insight – upon information and belief, with Marsha's knowledge and at Marsha's direction -- continues to use Lucia's name and picture on their website to raise money and advertise a continuation of the CJEA initial and ongoing certification program, even though Project Insight has no authority to certify practitioners in Lucia's methods or to use her name and image to bolster their ongoing attempts to collect money using Lucia's name.

38.    Project Insight, with Marsha as its executive director, and at the direction of Marsha, continues to use the VISIONING trademark, which remains registered in Lucia's name. They do so, despite the fact that Aleta and Celia, the sole heirs of Lucia and her only children by blood, adoption, or marriage, had signed small estate affidavits under California Probate Code § 13100 et seq. to transfer the intellectual property interests of their mother to Celia and Aleta, in equal shares, along with filing the necessary documents in California to preserve their mother's rights of publicity to their mother's name and image under California Property Code § 3344.1.

39.    In July 2023, Project Insight began selling new certifications and collecting payment for renewals of prior certifications by CJEA even though neither Project Insight nor Marsha had any right to do so. Moreover, they began advertising new training classes and accepting money by check or by Venmo to Marsha's personal account, which, upon information and belief, occurred with Marsha's knowledge and/or at Marsha's direction. There were dozens of registrants, with each registrant receiving a copy of the CJEA Training Manual co-authored and copyrighted by Aleta in December of 2022. At least some of the payments to obtain these copywritten materials went directly to Marsha through her Venmo; none of the payments went to Lucia, the estate of Lucia, Celia, or Aleta. Publicly available records demonstrate that payments

for certification or recertification went directly to Marsha and her personal account. Whether any of these funds sent to her actually ever made it to Project Insight, which markets itself as a not-for-profit organization, remains an open question which only discovery can resolve.

40.    Worse still—while Celia and Aleta were grieving the loss of their mother—Project Insight applied for and was granted a trademark for the image of the five dancing figures drawn by Celia, who allowed her mother to use the picture before her death:



The entire purpose of Project Insight's use of this mark is to suggest ownership of the brand and Lucia's work since its inception. Indeed, Project Insight originally falsely told the U.S. Trademark Office that it had been using this mark and other marks since 1997, when Lucia first advertised her training—years before the not-for-profit even existed. In another filing, Project Insight falsely told the Patent and Trademark Office that Lucia had been an employee of Project Insight and a licensee of its brands.

41.    Project Insight and Marsha have continued to use the image of the five dancing figures to promote their own services and paid events, profiting off the association between Lucia's work and their own. For example, on July 21, 2023 Project Insight posted an advertisement promoting enrollment in their CJEA certification program on Facebook, leveraging the mark in bottom left corner.

https://www.facebook.com/photo/?fbid=609545541312045&set=pb.100067698124746.-2207520000



42.     Between the July 21, 2023 post and May 1, 2024, the date on which the final payment for the 2023-2024 training program was due, Nelson's Venmo records show multiple payments to her with memo lines indicating the payment covered the application fee for the program or for tuition, using references such as "Course fee," "CJEA," "CJEAI," "CJEAITM application fee," "CHEA Manual" (typo in original), and maybe most clearly "for the CJEAI Intensive Oct 28-Nov 4 2023," which ties to the dates on which the first session of that year's training occurred.  https://account.venmo.com/u/Marsha-Nelson-13

43.     Additionally, Project Insight also posted a more recent promotional Facebook post on October 8, 2024, advertising their upcoming CJEA certification program once again. This post includes the logo on the lefthand side and urges potential customers to contact Marsha directly in order to "Secure your spot today!"

https://www.facebook.com/share/QE8W5SdDA67ZrZWZ/?mibextid=WC7FNe



44.    Project Insight followed up this post by creating a Facebook event on October 11, 2024 advertising the 6-day long CJEA Training Institute on November 10, 2024 with the above graphic and logo as well.  https://fb.me/e/dcaoNgrvw



45.    Accordingly, Nelson's personal Venmo account shows payments reflecting this training intensive. Payments with memos such as "Room," "Intensive Room/Board," and "Intensive" are recorded in the days following the October 8, 2024 advertisement in preparation for the November 10, 2024 event. https://account.venmo.com/u/Marsha-Nelson-13



46.   Project Insight and Marsha have also continued to use the VISIONING trademark for their work, even indicating that VISIONING is a registered trademark—but omitting that neither Project Insight nor Marsha in fact owns that trademark. For example, and not by limitation, on or about January 20, 2024, Marsha and Project Insight published on Project Insight's Instagram Page an advertisement for early-bird registration for the Creative Visualization Workshop, prominently displaying the "VISIONING®" trademark.  Likewise, on January 30, 2024, on Project Insight's Instagram, the Defendants published an Instagram post, with the caption "How VISIONING@ training transform entrepreneurs and leadership development. For more information about the VISIONING®☐ training DM."   The Defendants even went so far as to sell tickets to a seminar with the ticket indicating "VISIONING® methods process grief through art" in February 2024.  It

is ironic that Defendants acknowledge that VISIONING is a registered trademark, but nevertheless use the trademark, even though they do not own it. Defendants' actions caused confusion and improperly give the impression that Defendants own the registration on the mark, despite their knowledge that they do not own it.

## IV.  CAUSES OF ACTION

### Count 1 – Copyright Infringement of Five Figures Dancing Drawing

47.    The previous paragraphs are incorporated by reference as if fully set forth herein.

48.    The Defendants, acting alone or in conjunction, violated the registered copyright on the Five Figures Dancing Drawing by using it, and derivations of it they did not create, in their operations. These actions infringe on registered federal copyright VA0002424020, which is owned by the Plaintiffs and which the Copyright Office made its final decision to register the mark on December 3, 2024, when the Copyright Office formally approved the registration. The registration is effective as of August 14, 2024, the date the application was filed. The Defendants' conduct is in violation of 17 U.S.C. § 501. The money gained by these violations sometimes went to Project Insight and sometimes to Marsha through various methods, including by payments to her personal Venmo account. Marsha had knowledge of Project Insight's actions and personally directed them.

49.    Plaintiffs seek damages awardable under 17 U.S.C. § 504, including actual damages, profits obtained by defendants, statutory damages, pre-judgment interest, post-judgment interest.

50.    Plaintiffs also seek attorneys' fees under 17 U.S.C. § 505.

## <u>JURY DEMAND</u>

Plaintiffs demand trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.     A preliminary and permanent injunction that prohibits Defendants, their agents, servants, employees, attorneys, assigns and all persons in concert or participation with them, from using any of Lucia's intellectual property for commercial purposes.

B.     A preliminary and permanent injunction that prohibits Defendants, their agents, servants, employees, attorneys, assigns and all persons in concert of participation with them, from using Lucia's name, image, or likeness for commercial purposes in any domain names, email addresses, other advertising and promotional materials, or social media handles.

C.     A judgment and order requiring Defendants to pay Plaintiffs damages in an amount sufficient to compensate them for injury sustained as a consequence of Defendants' unlawful acts and disgorging Defendants' profits earned as a result of these unlawful acts;

D.     A judgment and order requiring Defendants to pay Plaintiff maximum statutory damages under the Texas and California right of publicity statutes;

E.     A judgment and order finding that this case stands out from other similar Lanham Act cases and requiring Defendant to pay all of Plaintiff's reasonable attorneys' fees, costs and expenses, including those available under 15 U.S.C. § 1117(a), and any other applicable law;

F.     A judgment and order requiring each Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded; and

G.     Such other and further relief as the Court deems just and equitable.

Dated: January 22, 2025

Respectfully submitted,

DJ Law

By:  /s/ David A. Jones
**David A. Jones**
State Bar No. 00795086
110 E. Houston St., Eighth Floor
San Antonio, TX 78205
Telephone: 210-876-1527
Email:  david@djlawpartners.com

Lindow ▪ Stephens ▪ Schultz LLP

By: /s/ Theodore C. Schultz
**Theodore C. Schultz**
State Bar No. 00797393
One Riverwalk Place
700 N. St. Mary's Street, Suite 1700
San Antonio, Texas 78205
Telephone: 210.227.2200
Facsimile: 210.227.4602
Email: tschultz@lsslaw.com